## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 11 2020, 8:33 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT - FATHER

Zachary F. Stewart
Jeffersonville, Indiana

ATTORNEY FOR APPELLANT - MOTHER

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of: M.C., J.C., Ja.C., Ma.C., and P.C. (Minor Children);

C.C. (Mother) and Ch.C. (Father),

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

December 11, 2020

Court of Appeals Case No. 20A-JT-1175

Appeal from the Orange Circuit Court

The Honorable Steven L. Owen, Judge

Trial Court Cause Nos.
59C01-1906-JT-122
59C01-1906-JT-123
59C01-1906-JT-124
59C01-1906-JT-125
59C01-1906-JT-126

**Najam, Judge.**

## Statement of the Case

C.C. ("Mother") and Ch.C. ("Father") (collectively "Parents") appeal the trial court's termination of their parental rights over their minor children M.C., J.C., Ja.C., Ma.C., and P.C. (collectively, "the Children"). Parents present the following restated issues for our review:

> 1. Whether the trial court abused its discretion when it admitted certain evidence at the termination hearing.
>
> 2. Whether the Indiana Department of Child Services ("DCS") presented sufficient evidence to support the termination of their parental rights.

We affirm.

## Facts and Procedural History

Parents are married and have five children together: M.C., born February 2, 2003; J.C., born September 29, 2007; Ja.C., born March 8, 2012; Ma.C., born May 7, 2013; and P.C., born August 19, 2015. On August 5, 2016, DCS received a report that the Children were victims of neglect and/or abuse. Mother, who was the Children's sole custodian at the time due to Father's incarceration, had been arrested and was incarcerated in the Orange County Jail. Mother did not know with whom the Children were staying at that time. Once the Children were located at the homes of family and friends, a Family Case Manager ("FCM") interviewed M.C., who stated that Mother had been

using illicit drugs and was "out of control"; Mother had physically abused her; and Mother had not provided stable housing for the Children "for months." Ex. Vol. 1 at 67. DCS filed petitions alleging the Children were children in need of services ("CHINS").

[4] The next month, September 2016, Mother was released from jail, and DCS offered the following services to her: supervised visits with the Children; random drug screens; and weekly meetings with a "homemaker/parent aide." Father's App. Vol. 2 at 70. Mother did not meet with the parent aide, and she did not submit to three requested drug screens. In approximately October or November, Mother's communication with the FCM "fell apart." *Id.* at 71.

[5] In February 2017, following a hearing, the trial court adjudicated the Children to be CHINS as to Mother. And following a dispositional hearing in April, the court entered an order stating that Mother was required to: maintain contact with the FCM; enroll in all programs recommended by the FCM or other service providers; maintain suitable housing; obtain a stable source of income; stop using drugs and alcohol; complete a Family Preservation Program; complete a parenting assessment and a substance abuse assessment and comply with recommendations; submit to random drug screens; and attend all visitations with the Children. Overall, Mother's compliance with the dispositional order was inconsistent, and she continued to abuse drugs.

[6] On July 26, 2017, Mother tested positive for amphetamine and methamphetamine, and in August, Mother was arrested for violating her

probation. Accordingly, Mother was incarcerated until September. In November 2017, Mother was arrested for possession of a syringe, and she was incarcerated until February 2018. In April 2018, she was arrested for possession of methamphetamine and incarcerated until June 2018. During July and August, Mother attempted, but did not complete, a 90-day inpatient substance abuse program. In March 2019, Mother was arrested while on home detention after she removed an electronic monitoring device from her ankle. Mother was incarcerated until July.

[7] Meanwhile, in August 2017, Father was released from prison and started serving parole. Father began visitation with the Children during the fall of 2017. As of December, the FCM considered Father to be a "viable option" to care for the Children. *Id.* at 75. However, by February 2018, Father had tested positive for methamphetamine, and he admitted to the FCM that he had been using methamphetamine since September 2017. In March 2018, Father was arrested for possession of methamphetamine, and his parole was revoked. Father went back to prison, and his anticipated release date is in 2021.

[8] In June 2019, DCS filed petitions to terminate Parents' parental rights over the Children. Following a hearing that spanned four days from December 2019 through March 2020, the trial court granted the termination petitions on May 21, 2020. In support of its order, the trial court entered extensive findings and conclusions, including the following:

> 2. There is a reasonable probability that the conditions which resulted in [the Children's] removal and continued placement

outside the home will not be remedied by Mother or Father and continuation of the parent-child relationship poses threat of harm to the [C]hildren's well-being, based on the Court's findings of fact and conclusions that:

a. The neglect that occurred to the [C]hildren while in Mother's care and/or Father's care.

b. Mother has failed to engage in and successfully complete services necessary for her to reunify with the [C]hildren over the past three and one-half (3 1/2) years.

c. Mother continues to fall in and out of incarceration. She is unwilling and/or unable to not be involved in the criminal justice system.

d. Father continues to be incarcerated due to his commission of crimes and his anti-social behavior. He has demonstrated an inability or unwillingness to achieve sobriety outside of incarceration and to correct a pattern of criminal behavior that has spanned his entire adult life and also the entire lives of his [C]hildren.

e. Parents have failed to provide a stable and drug-free home for the [C]hildren for the past three and one-half (3 1/2) years.

f. The bond between parents and the . . . [C]hildren has not been maintained due to: 1) [P]arents' inability and/or refusal to provide a safe and stable home 2) [P]arents' inability/refusal to stop using drugs and to minimize the effects of their respective use of illegal drugs, 3) [P]arents' inability/refusal to enhance their parenting abilities and to take the time and make the effort to be parents to their [C]hildren,

4) [P]arents' absence in the [C]hildren's lives due to arrests and incarceration and their refusal to conform their actions to the laws of our society and 5) the cessation of visitation as a result of [P]arents' lack of progress in services, sobriety, and stability for the [C]hildren.  Termination of Mother and Father's parental rights is in [the Children's] best interest[s].

* * *

8.  There is a satisfactory plan for the care and treatment for [the Children], that being adoption.

9.  The . . . [C]hildren need permanency and stability now, and any further delay poses a threat to their well-being.

*Id.* at 89-90.  This appeal ensued.

# Discussion and Decision

### *Standard of Review*

Parents contend that the trial court erred when it terminated their parental rights.  We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution."  *Bailey v. Tippecanoe Div. of Fam. & Child. (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*.  However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination.  *Schultz v. Porter Cty. Off. of Fam. & Child. (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001).  Termination of a parent-child

relationship is proper where a child's emotional and physical development is threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[10] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove:

> (B) that one (1) of the following is true:
>
>> (i)  There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2) (2020). DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[11]     When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Off. of Fam. & Child. (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Off. of Fam. & Child. (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[12]     Here, in terminating Parents' parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Off. of Fam. & Child.*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and, second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

## Issue One: Admission of Evidence

[13]     Father contends that the trial court abused its discretion when it admitted certain evidence at the termination hearing. The admission of evidence is left to the sound discretion of the trial court, and we will not reverse that decision

except for an abuse of that discretion. *Haney v. Adams Cty. Ofc. of Family and Children* (*In re A.H.*), 832 N.E.2d 563, 567 (Ind. Ct. App. 2005). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

### Drug Screen Result

[14] Father first contends that the trial court abused its discretion when it admitted DCS's Exhibit 5, which is a report on a drug test conducted on Father.[1] Father objected to the exhibit on the ground that it was inadmissible hearsay. DCS responded that it was admissible under the business records exception set out in Evidence Rule 803(6), and the court admitted it over Father's objection. As the State correctly points out, our Supreme Court very recently settled this issue and held that drug test results are admissible as "records of a regularly conducted activity exception to the hearsay rule pursuant to Indiana Rule of Evidence 803(6)," commonly known as the business records exception. *A.B. v. Ind. Dep't of Child Servs.* (*In re K.R.*), 154 N.E.3d 818, 820 (Ind. 2020). Accordingly, the trial court did not abuse its discretion when it admitted Father's drug test result.

---

[1] In his brief, Father cites relevant pages of the transcript corresponding with the introduction of Exhibit 5, and he cites one page from his appendix, which corresponds to the trial court's order terminating Parents' parental rights. Father does not cite the corresponding page(s) of the Exhibits folder. The table of contents for the Exhibits folder does not list a page number for Exhibit 5. And none of the Exhibits are numbered within the Exhibits folder.

*Criminal Histories*

[15] Father next contends that the trial court abused its discretion when it admitted into evidence DCS's exhibits numbered 2, 3, 8, 9, and 10, which were "certified court records, including full CCS summaries, informations, and judgments of conviction" regarding Father's and Mother's criminal histories. Father's Br. at 31. Father asserts that, "[o]nce [Father and Mother] acknowledge[d] the convictions [through their testimony], the State's only purpose in introducing these exhibits was to infect the proceedings with cumulative prejudicial evidence." *Id.* In essence, Father suggests that any evidence beyond the facts of the convictions themselves "should have been disallowed." *Id.*

[16] First, we note that Father does not cite any legal authority to support his assertion that the exhibits were prejudicial. *See* Ind. Appellate Rule 46(A)(8)(a). Second, Father does not direct us to the part of the transcript showing either his or Mother's objections to the challenged exhibits. *See* App. R. 46(A)(8)(d). Third, Father does not direct us to the pages in the Exhibits folder or elsewhere in the record on appeal where the challenged exhibits might be found.[2] Accordingly, we have no way of knowing either the content of the exhibits or the amount of information contained therein, which would help us determine

---

[2] Again, none of the exhibits are numbered in the Exhibits folder, and the table of contents does not include page numbers for each exhibit. "On review, we will not search the record to find a basis for a party's argument[.]" *Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997).

any prejudicial impact of the evidence. We hold that Father has waived this issue for our review.

*CASA Testimony*

[17] Finally, Father contends that the trial court abused its discretion when it admitted testimony from Robin Brown, the Court Appointed Special Advocate ("CASA"), regarding M.C. and Ja.C.'s placement with their uncle. Brown testified as follows:

> Q: Have you ever observed any concerns with [M.C. and Ja.C.] being in that home?
>
> A: No and they expressed to me that's where they want to be[,] and [M.C.,] at her age, I told her you know to advocate for her you know could she explain the reasons um, that she wanted to stay there, why she wanted to stay there and she was um, she was very vocal about it. She wants to finish school at Mitchell, um she feels like her grades have improved greatly since she's been in placement and had some stability and some help um, with schoolwork. She's got a job and she likes that. She just feels the home is stable um, and she felt that if they were allowed—

Tr. Vol. 4 at 188-89. At that point, Father objected on hearsay grounds. The trial court "noted" his objection but asked Brown to continue. *Id.* at 189.

[18] On appeal, Father maintains that Brown's testimony was inadmissible hearsay and that the trial court erred when it admitted it over his objection. As Father points out, in *K.T. v. Indiana Department of Child Services* (*In re O.G.*), we held that a CASA's testimony about what a child had "told her he wanted" was

inadmissible hearsay and that the trial court erred when it admitted that testimony. 65 N.E.3d 1080, 1088 (Ind. Ct. App. 2016), *trans. denied*.

[19] However, "[e]rrors in the admission of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *T.F. v. Ind. Dep't of Child Servs.* (*In re A.F.*), 69 N.E.3d 932, 942 (Ind. Ct. App. 2017) (citation omitted), *trans. denied*). "Admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other evidence admitted." *Id.* (citation omitted).

[20] Here, as the State points out, the trial court did not cite this testimony in support of the termination of Father's parental rights. Accordingly, Father has not shown that the admission of that evidence affected his substantial rights. Further, the challenged testimony was similar to other testimony to which neither Father nor Mother objected. For instance, Brown also testified, without objection, that: the Children had told her "that they want[ed] to . . . be secure and know where they're going to be and know what's going to happen to them"; the three older Children "stated to [her]" that they wanted to be adopted; and the Children "have expressed" to her that they "want to stay" in their new homes. Tr. Vol. 4 at 187-88. We hold that the admission of the challenged testimony was harmless error.

### Issue Two: Sufficiency of the Evidence

[21] Parents contend that the trial court erred when it concluded that: (1) the conditions that resulted in the Children's removal and the reasons for their

placement outside of Parents' home will not be remedied; (2) there is a reasonable probability that the continuation of the parent-child relationships poses a threat to the well-being of the Children; and (3) termination is in the Children's best interests. However, as Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need not address the issue of whether there is a reasonable probability that the continuation of the parent-child relationships poses a threat to the well-being of Children.

### *Reasons for Children's Placement Outside of Parents' Home*

[22] Parents contend that DCS did not present sufficient evidence to prove that the reasons for Children's placement outside of their home will not be remedied. This court has clarified that, given the wording of the statute, it is not just the basis for the initial removal of the child that may be considered for purposes of determining whether a parent's rights should be terminated, but also any basis resulting in the continued placement outside of a parent's home. *Inkenhaus v. Vanderburgh Cty. Off. of Fam. & Child. (In re A.I.)*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*. Here, the trial court properly considered the conditions leading to the continued placement of the Children outside of Parents' home, including Father's and Mother's criminal histories and chronic drug abuse. Put simply, Parents have not demonstrated any willingness or ability to provide a stable home for the Children.

[23] We hold that the evidence supports the trial court's findings and conclusion on this issue. To determine whether there is a reasonable probability that the reasons for Children's continued placement outside of Parents' home will not

be remedied, the trial court should judge Parents' fitness to care for the Children at the time of the termination hearing, taking into consideration evidence of changed conditions. *See E.M. v. Ind. Dep't of Child Servs. (In re E.M.)*, 4 N.E.3d 636, 643 (Ind. 2014). However, the court must also "evaluate the parent[s'] habitual patterns of conduct to determine the probability of future neglect or deprivation of the child[ren]." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[24] The trial court found, and the evidence supports, that:

> b. Mother has failed to engage in and successfully complete services necessary for her to reunify with the [C]hildren over the past three and one-half (3 1/2 years).
>
> c. Mother continues to fall in and out of incarceration. She is unwilling and/or unable to not be involved in the criminal justice system.
>
> d. Father continues to be incarcerated due to his commission of crimes and his anti-social behavior. He has demonstrated an inability or unwillingness to achieve sobriety outside of incarceration and to correct a pattern of criminal behavior that

> has spanned his entire adult life and also the entire lives of his [C]hildren.
>
> e. Parents have failed to provide a stable and drug-free home for the [C]hildren for the past three and one-half (3 1/2) years.

Father's App. Vol. 2 at 89. Parents' arguments on appeal are simply invitations for this Court to reweigh the evidence and judge the credibility of the witnesses, which we cannot do. Based on the totality of the circumstances, we hold that the trial court's findings support its conclusion that there is a reasonable probability the conditions that resulted in Children's removal and the reasons for their placement outside of Parents' home will not be remedied.

### Best Interests

[25] Parents also contend that the trial court erred when it concluded that termination of their parental rights is in the Children's best interests. In determining what is in a child's best interests, a juvenile court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs. (In re A.K.)*, 924 N.E.2d 212, 223 (Ind. Ct. App. 2010). A parent's historical inability to provide "adequate housing, stability, and supervision," in addition to the parent's current inability to do so, supports finding termination of parental rights is in the best interests of the child. *Id.*

[26] When making its decision, the court must subordinate the interests of the parents to those of the child. *See Stewart v. Ind. Dep't of Child Servs. (In re J.S.)*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). "The court need not wait until a

child is irreversibly harmed before terminating the parent-child relationship." *Id.* Moreover, this Court has previously held that recommendations of the family case manager and court-appointed advocate to terminate parental rights, coupled with evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

[27] Father asserts that he might get out of prison in December 2020 and that he made "progress with the [C]hildren when he was permitted visitation" in late 2017 and early 2018. Father's Br. at 26. But Father ignores the fact that he admitted to using methamphetamine during that entire period of time. Mother contends that "the fact that the Children are doing well in their current placement or that Mother made mistakes in the past, standing alone," does not support the court's finding that termination is in the Children's best interests. Mother's Br. at 27. Mother maintains that the court should give more weight to her present ability to care for the Children. However, this case has been pending since 2016. As our Supreme Court has held, the trial court had discretion to "disregard the efforts Mother made only shortly before termination and to weigh more heavily Mother's history of conduct prior to those efforts." *R.C. v. Ind. Dep't of Child Servs. (In re K.T.K.)*, 989 N.E.2d 1225, 1234 (Ind. 2013) (citation omitted).

[28] As the trial court's extensive findings demonstrate, Parents have not shown that they are capable of parenting the Children. M.C. and Ja.C. are bonded and thriving in their pre-adoptive home with their paternal uncle, and J.C., Ma.C.,

and P.C. will be adopted as a sibling group. Both the FCM and the CASA testified that termination of Parents' parental rights is in the Children's best interests. Given the totality of the evidence, Parents cannot show that the trial court erred when it concluded that termination of their rights is in the Children's best interests.

Affirmed.

Riley, J., and Crone, J., concur.